UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DESIREE BRYANT, | ) | CASE NO. 5:24-cv-01732 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| LIFECARE FAMILY HEALTH | ) | **ORDER AND DECISION** |
| AND DENTAL CENTER, INC., *et al.*, | ) | (Resolves Doc. 17) |
| | ) | |
| Defendants. | | |

This matter is before the Court on the *Defendants' Motion for Summary Judgment* (Doc. 17) (the "Motion") filed by Defendants Lifecare Family Health and Dental Center, Inc. ("Defendant Lifecare"), Rachel Haight, Dottie Wallick, and Eric Niemeyer (collectively, "Defendants"). Plaintiff Desiree Bryant ("Plaintiff") filed an opposition to the Motion (Doc. 24) and Defendants filed an additional reply. Doc. 26. The matter is fully briefed. For the following reasons, the Motion is GRANTED and this matter is DISMISSED.

I.      FACTUAL BACKGROUND

Plaintiff began her employment with Defendant Lifecare as a Licensed Practical Nurse in February 2021. Doc. 17-1, p. 2. Prior to her start date, Plaintiff was required to complete a drug screen, which was negative for all tested drugs. *Id.*, p. 6. Plaintiff continued working for Defendant Lifecare for almost two years without incident, aside from some attendance issues beginning in October 2021 but most recently documented in January 2023. *Id.*, pp. 4, 11.

In December 2022, Plaintiff requested Family and Medical Leave Act ("FMLA") paperwork after her supervisor suggested she do so. Bryant Dep., pp. 67–68; Wallick Dep., pp. 51–52. She was approved for intermittent FMLA leave beginning in January 2023. Doc. 17-1, p. 29. Around the same time, Plaintiff was required to complete a nurse recredentialing process,

1

which required another drug screen. Bryant Dep., pp. 68–69. Upon learning of the required screen, Plaintiff told the site supervisor that she was concerned she would not pass the drug screen. *Id.*, p. 70; Haight Dep., p. 38. At some point following that conversation, Plaintiff completed the screen and tested negative for all substances (Wallick Dep., pp. 36–37), but, due to concerns about possible drug use, Plaintiff was placed on a 30-day unpaid suspension and informed that she was required to complete counseling through the Employee Assistance Program ("EAP") before she could return to work. Doc. 17-1, p. 29; Wallick Dep., pp. 40–41; Niemeyer Dep., pp. 22–27.

Two days after she was suspended, Plaintiff sent an email to Defendant Niemeyer, Chief Executive Officer of Defendant Lifecare. Doc. 17-1, p. 29. In the email, Plaintiff denied the use of drugs and, in part, claimed Defendant Lifecare was retaliating against her for using FMLA leave. *Id.* Defendant Niemeyer sent a response, wherein he informed Plaintiff that her suspension was not related to the drug screen or its results, but rather due to concerns of her using drugs. *Id.*, pp. 27–28. He additionally informed Plaintiff that Defendant Wallick would provide "instructions and expectations" moving forward. *Id.*, p. 28. At the conclusion of the 30-day suspension in March 2023, it was determined that Plaintiff did not receive the expected formal letter from Defendant Wallick, so it was emailed to her on March 14, 2023. *Id.*, p. 27. Due to the delayed delivery of the letter, Plaintiff was then paid for two weeks of her suspension. Bryant Dep., p. 87. She completed the EAP requirements, including counseling (Bryant Dep., pp. 77–78; Wallick Dep., p. 40) and was cleared to return to work on April 26, 2023. Bryant Dep., p. 89.

Ultimately, Plaintiff returned to work on May 1, 2023 as a Licensed Practical Nurse with the same duties, benefits, and rate of pay as when she left on suspension in February 2023. Bryant Dep., p. 111. Plaintiff started seeing patients early in the day but struggled remembering some aspects of her position, including the use of the charting system. *Id.*, pp. 115–116. She sought out

help and received assistance from a coworker (Bryant Dep., pp. 117–118; Doc. 17-2, p. 3) with the charting system and otherwise did not speak to anyone about feeling uncomfortable that day. Bryant Dep., p. 117.

Plaintiff finished her shift on May 1, 2023 and was scheduled to work the rest of the week [May 2-4, 2023] but called off each day and either did not provide or does not recall the reasons for her call-offs. *Id.*, pp. 127–129. Then, on her next day of scheduled work [May 8, 2023], Plaintiff resigned from her position with Defendant Lifecare, citing passive aggressiveness and hostility as the reasons for leaving. Doc. 17-1, p. 7.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d

3

1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. LAW AND ANALYSIS

Plaintiff asserts claims of disability discrimination in violation of the Americans with Disabilities Act (the "ADA") and Ohio law (Counts One and Two), retaliation in violation of the ADA and Ohio law (Counts Three and Four), retaliation in violation of her rights under the Family Medical Leave Act ("FMLA") (Count Five), and unlawful aiding, abetting, and inciting of discrimination in violation of Ohio law (Count Six). Doc. 1.

#### A. Disability Discrimination – Counts One and Two

Plaintiff states that she suffers from thyrotoxicosis, hypokalemia, abnormal weight loss, and excessive fatigue. Compl. ¶ 137. She claims that these conditions render her disabled, and Defendant Lifecare treated her differently and constructively discharged her due to the disabilities. Compl., ¶¶ 140–145.

The ADA prohibits a covered employer from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A *prima facie* case of disability discrimination under the ADA requires that Plaintiff show: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment action decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5)

the position remained open while the employer sought other applicants or the individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 258–259 (6th Cir. 2011) (quoting *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)).[1]

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include, among others, "walking, standing, lifting, bending, ... and working." 42 U.S.C. § 12102(2). To determine whether an impairment substantially limits a major life activity within the meaning of the ADA, the Court considers the following three factors: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment." *Cardenas-Meade v. Pfizer, Inc.,* 510 Fed. Appx. 367, 370 (6th Cir. 2013).

### 1. Plaintiff's Disability

The Court finds no genuine issue of fact regarding Plaintiff's alleged disability. In her opposition, Plaintiff argues that Defendants concede the existence of a disability and, therefore, she does not address it. Doc. 24, p. 7. Defendants' reply indicates otherwise. Doc. 26, p. 4.

The Complaint alleges thyrotoxicosis, hypokalemia, abnormal weight loss, and excessive fatigue. Compl. ¶ 137. Plaintiff specifically testified that her disabilities are medical conditions related to her thyroid and low blood pressure. Bryant Dep., pp. 97, 132. She indicated these conditions limited her in that they caused her to feel weak, dizzy, and nauseous at the time of her

---

[1] The legal analysis under Ohio law mirrors the ADA, therefore Plaintiff's discrimination claims will be evaluated together. *See Moore v. Next Generation Hosp. LLC*, No. 24-4050, 2025 U.S. App. LEXIS 28522, at *8 (6th Cir. Oct. 29, 2025) (quoting *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012)).

employment and she took a few days off due to the symptoms. *Id.*, pp. 100–101. Plaintiff further contended she, at times, has trouble standing up and sometimes feels lightheaded, but that a doctor has not advised her to avoid activities aside from a general recommendation to "sit and rest" when needed. *Id.*, p. 133. Plaintiff additionally said she is not currently limited by these conditions (*Id.*, p. 100), and she has not taken medicine for the conditions or had a primary care provider treating them in at least two years. *Id.*, p. 102. Notably, there is nothing additional in the record, such as a provider note or medical record, to support Plaintiff's claim of a disability.

There is no evidence of a diagnosis consistent with the allegations in Plaintiff's complaint.[2] Plaintiff testified she has been able to work, and in fact started applying to other positions as early as May 2, 2023, before her resignation from Defendant Lifecare. *Id.*, p. 36. Plaintiff has failed to provide any evidence to show that she was disabled such that she suffered a physical impairment that substantially limited a major life activity. The limited information provided demonstrates any impairment was negligible, at best. Plaintiff failed to point to a genuine issue of material fact that should be resolved by a jury, and, therefore, she failed to meet the first element of the *prima facie* case with respect to this claim of disability discrimination.

### 2. Plaintiff's Perceived Disability

In her discrimination claims, Plaintiff alternatively asserts that Defendant Lifecare perceived her as being disabled and discriminated against her accordingly. Compl., §§ 141–143, 158–163.

The same *prima facie* test applies to Plaintiff's alternative theories, except that she may satisfy the first element [that she is disabled] by showing "that she was perceived to be and treated

---

[2] There is no testimony that Plaintiff was diagnosed with thyrotoxicosis, hypokalemia, abnormal weight loss, or excessive fatigue. This inconsistency is compounded by the fact that Plaintiff has failed to produce any medical records to establish her diagnoses.

6

as if she were disabled." *Rosebrough v. Buckeye Valley High Sch.*, 582 Fed. Appx. 647, 651 (6th Cir. 2014) (citing *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 318 (6th Cir. 2001)). She need only show that Defendant Lifecare believed she had an impairment, either physical or mental. *EEOC v. West Meade Place, LLP*, 841 Fed. Appx. 962, 967 (6th Cir. 2021). However, a request for leave under the FMLA alone does not establish knowledge of a disability. *See Ebright v. City of Pickerington*, No. 2:16-cv-378, 2018 U.S. Dist. LEXIS 50766, at *26 (S.D. Ohio Mar. 27, 2018).

As previously noted, Plaintiff erroneously claims that Defendants concede this first element and therefore does not point to any evidence in support of her alternative theory that Defendants "regarded her" as disabled. Doc. 24, p. 7. Additionally, Plaintiff did not testify as to any conversations between her and Defendant Lifecare or its employees that would establish knowledge or belief of her alleged disabilities. She only asserted that Lifecare was supportive of her request for leave under FMLA, which was approved. Bryant Dep., pp. 67–68. On this alternative theory, Plaintiff again fails to point to a genuine issue of material fact as to her perceived disability that should be resolved by a jury, and, therefore, she does not meet the first element of the *prima facie* case.

Accordingly, Plaintiff's discrimination claims under both theories fail as a matter of law. Defendants' motion for summary judgment as to the discrimination claims (Counts One and Two) is granted.

### B.  Retaliation – Counts Three, Four, and Five

Plaintiff also asserts claims for retaliation under the ADA, Ohio law, and FMLA. Compl. ¶¶ 170–198. She indicates she complained about the alleged disability discrimination and Defendants retaliated against her by subjecting her to a mandatory drug test and placing her on an 80-day unpaid suspension. *Id.* ¶¶ 171–173, 180–182. Plaintiff additionally claims Defendant

Lifecare retaliated against her for using FMLA leave when it suspended her employment and constructively discharged her. *Id.* ¶¶ 193–196.

To establish a *prima facie* case of retaliation, Plaintiff must show: (1) she was engaged in a protected activity; (2) her exercise of the protected activity was known to Defendants; (3) she was subjected to an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse employment action. *Kirkland v. James*, 657 Fed. Appx. 580, 585 (6th Cir. 2016).[3] "Plaintiff need not prove [she] had a disability…rather, the protected act is the showing of a good-faith request for reasonable accommodations." *Baker v. Windsor Republic Doors*, 414 Fed. Appx. 764, 777 n. 8 (6th Cir. 2011). A person is engaged in a protected activity when they make a complaint that "take[s] an overt stand against suspected illegal discriminatory action." *Blizzard v. Marion Tech. College*, 698 F.3d 275, 288 (6th Cir. 2012) (quoting *Coch v. Gem Indus.*, 2005 Ohio 3045, 2005 WL 1414454, at *5 (Ohio Ct. App. 2005)). Specifically, a complaint must object to discriminatory conduct "based on . . . membership of a protected class." *Balding-Margolis v. Cleveland Arcade*, 352 Fed. Appx. 35, 45 (6th Cir. 2009). It is not enough for a complaint to contain "a vague charge of discrimination . . . to constitute opposition to constitute [a protected activity]." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).

Plaintiff indicates she was informed of the 30-day suspension, then made a complaint of disability discrimination after being on suspension for less than a week, and the suspension

---

[3] Like the discrimination claims, "courts examine retaliation claims under the ADA, FMLA, and Ohio law under the same framework," therefore these claims will be analyzed simultaneously. *Scott v. Veeva Sys.*, No. 2:23-cv-1027, 2024 U.S. Dist. LEXIS 164775, at *8 (S.D. Ohio July 2, 2024); s*ee also Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006).

ultimately lasted over 80 days. Doc. 24, pp. 4–5, 14. Accordingly, Plaintiff has satisfied the first two elements of the *prima facie* case as to the retaliation claims under the ADA and Ohio law.

A request for intermittent FMLA leave may constitute a request for a reasonable accommodation. *Jackson v. United States Postal Serv.*, 149 F.4th 656, 679 (6th Cir. 2025). The parties agree Plaintiff requested FMLA leave, and it was approved. Therefore, Plaintiff has satisfied the first two elements of the *prima facie* case as to the FMLA retaliation as well.

1. The Drug Test

Generally, requiring an employee to submit to a drug test is not an adverse employment action, but it may be considered so "where a drug test is not performed in a routine fashion following the regular and legitimate practices of the employer, but is conducted in a manner that harasses or humiliates the employee." *See Proffitt v. AK Steel Corp.*, No. C-1-03-471, 2006 U.S. Dist. LEXIS 5361, at *14 (S.D. Ohio Jan. 25, 2006) (quoting *Stockett v. Muncie Indiana Transit System*, 221 F.3d 997, 1001-02 (7th Cir. 2000)). Plaintiff did not provide any evidence indicating the drug test was conducted in anything other than a standard and professional manner. Further, she admitted that the drug screen was originally requested due to a routine nurse recredentialing process (Bryant Dep., pp. 68–69) and that she agreed Defendant Lifecare acted appropriately when it required the test. *Id.*, p. 77. As such, Plaintiff has not established an issue of material fact as to the drug test being an adverse employment action for purposes of the retaliation claims.

2. The Unpaid Suspension

An unpaid suspension is an adverse employment action. *DeVooght v. City of Warren*, 157 F. 4th 893, 2025 U.S. App. LEXIS 29015, at *14 (6th Cir. 2025). The parties agree that at least part of Plaintiff's suspension was unpaid, therefore, there is no question as to whether Plaintiff has established the third element of her *prima facie* case. However, the parties disagree as to the fourth

9

element with respect to this adverse action – whether there was a causal connection between Plaintiff's complaints of disability discrimination and usage of FMLA leave and her unpaid suspension.

The causal connection prong requires Plaintiff to show that her protected activities [the complaint of discrimination and the FMLA use] were the but-for causes of Defendant Lifecare's adverse action [the unpaid suspension]. *Pemberton v. Bell's Brewery, Inc.*, 150 F. 4th 751, 767 (6th Cir. 2025). She must "put forth some evidence…sufficient to raise the inference that the discrimination or protected activity was the likely reason for the adverse action." *Id.* (internal citations and quotation marks omitted).

Plaintiff was placed on unpaid suspension on February 13, 2023. Doc. 17-1, p. 29; Wallick Dep., p. 41. Then, on February 15, 2023, she sent an email to Defendant Niemeyer which, in part, raised complaints of FMLA retaliation and disability discrimination. Doc. 17-1, p. 29. The email also acknowledged that Defendant Lifecare had recommended drug treatment, but that Plaintiff was refusing to participate. *Id.* Defendant Niemeyer responded to Plaintiff the next day, indicating that Defendant Wallick would provide Plaintiff with a letter with instructions on how to move forward with the required EAP and return to work. Doc. 17-1, p. 28. Plaintiff testified that she did not receive communication from Defendant Lifecare or any of its employees in the next 30 days, and she did not reach out to them for more information until after the 30-day suspension. Bryant Dep., p. 85. Defendant Wallick similarly testified that Plaintiff was not cleared to return to work at the end of the 30 days, in March 2023, and did not complete the EAP and return to work until May 2023. Wallick Dep., pp. 56–57. The parties agree that the details of the EAP requirements were communicated to Plaintiff on March 14, 2023, after the formal letter from Defendant Wallick was sent to the wrong address in February. Bryant Dep., pp. 86–87; Doc. 17-1, p. 27. Plaintiff was

then paid for two weeks of her suspension due to the delayed receipt of the letter from Defendant Wallick (Bryant Dep., p. 87) and ultimately was not cleared to return to work until April 26, 2023. Bryant Dep., p. 89; Niemeyer Dep., p. 50.

The testimony indicates the parties agree that the unpaid suspension was originally set for 30 days but was extended after Plaintiff did not start the EAP until after March 2023. Plaintiff does not point to any evidence that raises the inference that her complaint of discrimination on February 15, 2023 was the likely reason for the extension of her unpaid leave. The only reasonable inference is that, at a minimum, the extension was due to both parties' oversights and miscommunications, rather than some affirmative act by Defendants. Therefore, Plaintiff does not point to an issue of material fact as to the complaint of disability discrimination being the cause of the unpaid suspension.

As to the usage of FMLA leave, Plaintiff again fails to establish that this was the cause of her extended unpaid suspension. Plaintiff's letter on February 15, 2023 makes the sole and conclusory assertion that the suspension was retaliation for her approved FMLA leave. Doc. 17-1, p. 29. But her testimony is contradictory to this claim. When asked, Plaintiff was unsure of whether she exercised any of the approved leave and further indicated that Defendant Lifecare did not object to, or make any negative comments related to, the intermittent FMLA leave. Bryant Dep., p. 68. Additionally, Plaintiff indicated in her email to Defendant Niemeyer that she was granted FMLA leave on January 5, 2023, but she did not clarify when she took the leave. Doc. 17-1, p. 29.

The parties agree that Defendant Lifecare's employees were supportive of Plaintiff's request for FMLA leave. Bryant Dep., p. 67; Wallick Dep., p. 52. Further, Defendant Niemeyer confirmed in his email to Plaintiff on February 16, 2023 that the reason for the suspension was her admission to using "weed" (Doc. 17-1, p. 27) and both Defendants Niemeyer and Wallick testified

11

the same (Wallick Dep., p. 40; Niemeyer Dep., p. 22). Plaintiff does not point to any evidence in support of her assertion that her FMLA leave was the cause of the any portion of the unpaid suspension, and, therefore she does not meet the last element of the *prima facie* case with respect to this theory of retaliation.

Plaintiff does not raise an issue of material fact as to the complaints of disability discrimination or FMLA retaliation being causally connected to the unpaid suspension.

### 3. The Constructive Discharge

Constructive discharge is a recognized adverse employment action. *Arndt v. Ford Motor Co.*, 716 Fed. Appx. 519, 529 (6th Cir. 2017). Plaintiff must show that "the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Hargett v. Jefferson Cty. Bd. of Educ.*, No. 17-5368, 2017 U.S. App. LEXIS 21799, at *16 (6th Cir. Oct. 27, 2017) (quoting *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008)). While both the employer's intent and the employee's feelings are to be examined, an employee must show more than hurt feelings. *See Savage v. Gee*, 665 F.3d 732, 739–40 (6th Cir. 2012). "A plaintiff must prove: (1) the employer deliberately created working conditions that a reasonable person would perceive as intolerable, (2) the employer did so to force the employee to quit, and (3) the employee quit." *Cooper v. Dolgencorp, LLC*, 93 F. 4th 360, 373 (6th Cir. 2024) (internal citation omitted).

Plaintiff points to alleged tension and passive aggressive behavior as the intolerable conditions that caused her to resign her position with Defendant Lifecare. She testified that her system passwords were reset to "GoodTimes" and "BeBrave" upon her return to work (Bryant Dep., p. 5) and that, while unsure of whether the passwords pertained to her situation, she felt they were aggressive. *Id.*, p. 122. She also claimed that she felt tension upon her return to work and had

to ask a coworker for help using the charting system. *Id.*, pp. 5–6. But Defendant Haight, the site supervisor, testified that she welcomed Plaintiff on May 1, 2023 and offered the assistance of a coworker to help Plaintiff with getting re-acquainted to the job duties. Haight Dep., pp. 64, 74. Plaintiff then contradicted her first statement about May 1 when she testified that there was nothing unusual about her first day back and that she only had significant interactions with two coworkers that day, both of whom were helpful to her. *Id.*, pp. 126–127. Additionally, two of Plaintiff's coworkers reported that May 1, 2023 was a busy but normal day and, aside from noticing Plaintiff's perceived general anxiety about being back to work for the first day in months, they did not interpret the situation as uncomfortable or tense. Doc. 17-2. Despite this, after her first shift following suspension, Plaintiff did not return to work. She did not report for her shifts on May 2, 3, or 4 and does not recall the reasons why she called off. Bryant Dep., pp. 128–129.

Plaintiff does not provide any evidence that demonstrates Defendant Lifecare's intent to create difficult, unpleasant, or intolerable conditions such that a reasonable person would resign. She failed to point to a genuine issue of material fact as to whether she was constructively discharged, and, therefore, she failed to establish an adverse employment action and meet the first element of the *prima facie* case on this theory.

With respect to the drug screen and the constructive discharge, Plaintiff failed to establish these were adverse employment actions. Additionally, she did not establish that the unpaid suspension was causally connected to a complaint of disability discrimination or her use of FMLA leave. Accordingly, Defendants are entitled to summary judgment on the retaliation claims (Counts Three, Four, and Five).

13

### C. Aiding and Abetting – Count Six

Last, Plaintiff claims Defendants Haight, Niemeyer, and Wallick violated Ohio law when they aided, abetted, incited, coerced, and/or compelled Defendant Lifecare's discriminatory acts and constructive discharge. Compl., ¶¶ 202–205. Without a viable discrimination or retaliation claim, the claim of aiding and abetting discrimination pursuant to section 4112.02(J) of the Ohio Revised Code fails as a matter of law. *See Schelle v. City of Piqua*, No. 24-3980, 2025 U.S. App. LEXIS 14012, at *16 (6th Cir. June 5, 2025) (citing *Childs v. Kroger Co.*, 222 N.E.3d 741, 782–83 (Ohio Ct. App. Aug. 3, 2023)). As such, Defendants are entitled to summary judgment with respect to Count Six.

### IV. CONCLUSION

For the foregoing reasons, *Defendants' Motion for Summary Judgment* (Doc. 17) is GRANTED and this matter is DISMISSED.

**IT IS SO ORDERED.**

December 16, 2025  /s/ John R. Adams
Date  John R. Adams
  United States District Judge